**UNPUBLISHED**

**UNITED STATES COURT OF APPEALS**

**FOR THE FOURTH CIRCUIT**

UNITED STATES OF AMERICA,
Plaintiff-Appellee,

v.                                                          No. 97-4521

LORI COBB-LEONARD,
Defendant-Appellant.

Appeal from the United States District Court
for the Eastern District of North Carolina, at Elizabeth City.
James C. Fox, District Judge.
(CR-96-13-2-F)

Submitted: March 17, 1998

Decided: April 3, 1998

Before LUTTIG and MOTZ, Circuit Judges, and
PHILLIPS, Senior Circuit Judge.

_____

Affirmed by unpublished per curiam opinion.

_____

**COUNSEL**

W. Gregory Duke, BLOUNT & DUKE, Greenville, North Carolina,
for Appellant. Janice McKenzie Cole, United States Attorney, Anne
M. Hayes, Assistant United States Attorney, Raleigh, North Carolina,
for Appellee.

_____

Unpublished opinions are not binding precedent in this circuit. See Local Rule 36(c).

_____

**OPINION**

PER CURIAM:

Lori Cobb-Leonard appeals from her convictions for offenses she committed as a Postal Service employee. For the following reasons, we affirm.

Cobb-Leonard was a window clerk at the Enfield, North Carolina, Post Office. Her duties included selling stamps, accepting packages for mailing, handling accountable mail, and issuing money orders. As a postal clerk, Cobb-Leonard was assigned a cash drawer. Pursuant to procedures, she was required to place her cash drawer in a locked safe or lock the drawer when she left the post office at the end of the work day or whenever she stepped away from her window at the counter.

In December 1994, the Enfield Postmaster, Thomas Burnham, did an accountability check on Cobb-Leonard's drawer to determine whether the amount of stock and cash in her drawer balanced the amount the records reflected she should have at that time. Burnham and two postal employees each counted the money and stock in Cobb-Leonard's drawer, and they determined that there was a shortage in the drawer of $1665.44. In January 1995, Cobb-Leonard requested and was provided the opportunity to count the contents of her drawer. She and Burnham counted her drawer on that date and reached the same figure that had been reached in December.

Postal records also revealed that in late 1994 there were discrepancies in records relating to money orders Cobb-Leonard had sold. Burnham received a money order reconciliation report from the central data center. He compared the report to his local records and found inconsistencies with respect to some money orders between the dollar amounts reflected in the data center records and the local records. Burnham retrieved three money order vouchers, dated September 2,

2

6, and 9, 1994, that corresponded to money orders for which the records were inconsistent. Two of the three vouchers were partially printed in ink where the images should have been carbonized. Burnham determined that each of the three money orders had been issued by the post office to Cobb-Leonard for sale to postal customers. The vouchers and Cobb-Leonard's daily financial reports reflected that each of the money orders had been sold for $50, but the amounts imprinted on the original money orders were $500, $500, and $350. All funds collected by a postal clerk for the purchase of money orders must be turned in to the post office at the end of the day. Also, each clerk is required to sign a verification at the end of each day that he or she has remitted all funds and that the records are correct.

Also, in late 1994, customers complained that food stamp letters were not arriving at their destinations. In response to those complaints, Douglas Funderburg, a postal inspector, prepared a test letter that contained food stamps as well as a credit-card sized electronic signaling device that would transmit an alarm signal when the envelope was opened or its contents were removed. Funderburg placed the letter in a mail drop at the Enfield Post Office and kept a surveillance of the office. At approximately 5:30 p.m., when Cobb-Leonard was alone in the post office, the alarm sounded. Funderburg and another postal inspector entered the post office, approached Cobb-Leonard, and asked what she had done with the food stamp envelope she had just opened. Cobb-Leonard said she had no idea what he was talking about and denied knowing what a food stamp letter looked like. The postal inspectors conducted a cursory search of the post office for the envelope and did not find it. Cobb-Leonard subsequently picked it out of the "throw back case." The envelope was sealed, but it was not in its original condition. Funderburg noticed that some glue was exposed on the back of the envelope, although the glue had not been visible when he had delivered the envelope. Cobb-Leonard eventually acknowledged that she had opened the envelope and that her fingerprints might be inside. She denied, however, having seen the transmitter or the food stamps in the envelope. She stated that she had opened the envelope to find the certified number on it. She subsequently provided a written statement that was somewhat different from her initial statements.

Cobb-Leonard was charged by indictment with one count of embezzling a letter and food stamps contained therein entrusted to her

3

as a Postal Service employee, in violation of 18 U.S.C. § 1709 (1994) (count one); one count of converting to her own use money that had come into her hands in the execution of her employment as a Postal Service employee, in violation of 18 U.S.C. § 1711 (1994) (count two); three counts of fraudulently obtaining and receiving money orders without having received and paid the full amounts for them, in violation of 18 U.S.C. § 500 (1994) (counts three, four, and five); and three counts of making false documents regarding the values of the money orders that were so issued, in violation of 18 U.S.C. § 1001 (1994) (counts six, seven, and eight). Prior to trial, Cobb-Leonard moved to sever the counts based on three separate incidents: (1) the opening of the certified letter; (2) the alteration of the money orders; and (3) the cash drawer shortage. The court denied the motion, and she unsuccessfully renewed her motion for severance during trial.

The jury found Cobb-Leonard guilty as charged. However, upon Cobb-Leonard's motion, the district court dismissed count one. The district court imposed concurrent terms of imprisonment of twelve months and one day as to each of counts two through eight followed by three years of supervised release. Cobb-Leonard timely appeals.

On appeal, Cobb-Leonard claims that the district court abused its discretion by not severing the eight counts contained in the indictment pursuant to Fed. R. Crim. P. 14. She contends that the offenses were based upon three distinct and separate factual bases and shared no common evidence. She further alleges that she was prejudiced by the cumulative effect of the evidence introduced as to all counts on the jury's consideration of each individual count.

Joinder of offenses is the rule, not the exception, and a district court's decision to deny a motion to sever should only be overturned upon a "showing of clear prejudice or abuse of discretion." United States v. Acker, 52 F.3d 509, 514 (4th Cir. 1995). In the present case, Cobb-Leonard fails to make such a showing. Joinder is proper under Fed. R. Crim. P. 8(a), in three circumstances: (1) the offenses are of the same or similar character; (2) the offenses are based on the same act or transaction; or (3) the offenses are based on two or more acts or transactions connected together or constituting parts of a common scheme or plan. See United States v. Goldman, 750 F.2d 1221, 1224

4

(4th Cir. 1984); United States v. Foutz, 540 F.2d 733, 736 (4th Cir. 1976).

The offenses in the present case were properly joined because, as the district court noted, the offenses charged in the indictment could be viewed as based on two or more acts or transactions connected together or constituting parts of a common scheme or plan. Cobb-Leonard's offenses occurred over a span of only four months, and all are financial crimes whereby Cobb-Leonard used her position as a Postal Service employee to obtain money or things of value.

Once the offenses are properly joined under Rule 8(a), the district court has the discretion to sever the offenses pursuant to Rule 14 if there is a showing of prejudice. See United States v. Haney, 914 F.2d 602, 606 (4th Cir. 1990); Goldman, 750 F.2d at 1224; Foutz, 540 F.2d at 736. Cobb-Leonard was not prejudiced by the joinder in this case because even if the counts had been severed for trial, evidence of any one of the various offenses would have been admissible at a separate trial for any other under Fed. R. Evid. 404(b), to establish "proof of intent, plan, knowledge, or absence of mistake or accident." Also, there was not much danger that the jury confused or cumulated the evidence because the Government's evidence regarding the individual charges was simple and different such that the jury could segregate the evidence into "`separate intellectual boxes.'" Foutz, 540 F.2d at 738 (citations omitted). We find that Cobb-Leonard failed to carry her burden of demonstrating "a strong showing of prejudice." See Goldman, 750 F.2d at 1225.

Accordingly, we affirm Cobb-Leonard's convictions. We dispense with oral argument because the facts and legal contentions are adequately presented in the materials before the court and argument would not aid the decisional process.

AFFIRMED

5